Mr. James Pledger Director, Department of Finance and Administration P.O. Box 3278 Little Rock, AR 72203
Dear Mr. Pledger:
This is in response to your request for an opinion on the following question:
 Whether a re-opened city jail, called an alternative housing shelter for misdemeanor offenders, has to abide by the Arkansas Jail Standards?
You state that persons who appear before the municipal judge for DWI or non-payment of fines are sentenced, then given the option of going to the alternative shelter. You explain that the doors of the shelter are not locked, but sentenced persons must sign an agreement which sets forth the terms that must be followed in order to satisfy the assessed penalties. The terms of the agreement govern the sentenced persons' conduct and activities while at the shelter, and include a requirement that they remain on the property within and immediately adjacent to the City Hall building, and that they remain in the immediate area of their assigned quarters in the shelter from 5:30 p.m. until 6:30 a.m.
The "Arkansas Jail Standards" referenced in your question are the standards developed under A.C.A. §§ 12-26-103—108 (1987 and Cum. Supp. 1991) for the operation of a "criminal detention facility." See A.C.A. §§ 12-26-102(3) (1987) and12-26-104(g)(4) (Cum. Supp. 1991). The term "[c]riminal detention facility" is defined under § 12-26-104(g)(4) as "any institution in which prisoners may be held for any length of time whatsoever, or any type of temporary holding facility."[1]
It is my opinion, based upon the facts provided, that the alternative housing shelter is a "criminal detention facility" for purposes of Sections 12-26-101—108, and thus must meet the minimum standards developed thereunder. Persons sentenced to the shelter are clearly held for a length of time. See A.C.A. §12-26-104(g)(4), supra. The fact that they "voluntarily agree" to the terms of their confinement is not, in my opinion, conclusive, in light of the threat of arrest on other charges should they violate the agreement. Nor, in my opinion, does the designation of the facility as an "alternative shelter" remove it from the required standards. The purpose of the facility, rather than its designation, will be controlling. It is possible that the shelter would still be deemed a jail, notwithstanding the prior closure of the facility as a "jail" per se.[2] In any event, it is clearly an "institution," i.e., an establishment of a public character (See Webster's, supra, at 438 andBlack's, supra, at 719) in which criminal offenders are held or kept. See A.C.A. §§ 12-26-102(3) (1987) and 12-26-104(g)(4) (Cum. Supp. 1991). The applicability of the jail standards is, in my opinion, unavoidable.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] See also A.C.A. § 12-26-102(3) (1987) ("`criminal detention facility' means any institution operated by a political jurisdiction or a combination of jurisdictions for the care, keeping, or rehabilitative needs of adult criminal offenders, including regional jails, county jails, municipal jails, and temporary holding units.")
[2] The term "jail" is defined in Webster's Seventh NewCollegiate Dictionary (1972) as "a building for the confinement of persons held in lawful custody." Webster's at 453. Seealso Black's Law Dictionary (5th ed.) ("jail" defined as ". . . a building designated by law, or regularly used, for the confinement of persons held in lawful custody. A place of confinement that is more than a police station lockup and less than a prison. It is usually used to hold persons either convicted of misdemeanors (minor crimes) or persons awaiting trial." Black's at 748.